UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| URS CH2M OAK RIDGE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:15-CV-465-TAV-CCS |
| | ) | |
| THE BANK OF NEW YORK MELLON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil matter is before the Court on the motion to dismiss of defendant The Bank of New York Mellon ("BNYM") [Doc. 5]. Plaintiff URS CH2M Oak Ridge, LLC ("UCOR") responded in opposition [Doc. 15]; BNYM replied in turn [Doc. 17]. Also before the Court is UCOR's request for a hearing on the motion to dismiss [Doc. 18]. BNYM responded in opposition to the request [Doc. 10]. To date, plaintiff has yet to file a reply and the time in which to do so has passed. E.D. Tenn. L.R. 7.1, 7.2. For the reasons that follow, the motion for hearing [Doc. 18] will be denied and motion to dismiss [Doc. 5] will be granted.

**I.     Background[1]**

On or about August 1, 2011, UCOR entered into an agreement naming BNYM trustee of the defined benefit plan for the grandfathered employees of the east Tennessee

---

[1] For the purposes of the motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint" (citations omitted)).

Technology Park Pension Plan ("Trust Agreement") [Doc. 1-1 ¶ 6; Doc. 5-2].[2] Under the Trust Agreement, BNYM was responsible for handling retiree pension payrolls, withholding retiree insurance premiums owed to service providers, and remitting checks to UCOR for the sum total of the premium withholdings [Doc. 1-1 ¶ 6]. UCOR was responsible for funding the plan, paying benefits to qualified recipients, and delivering the remitted premium withholdings to the insurance providers [*Id.*]. As trustee, BNYM agreed to hold assets of the benefit plan "for the purposes of providing health, welfare[,] and pension payments . . . to [p]lan participants and their beneficiaries" [*Id.* ¶ 7]. The parties further contracted "that none of the funds [BNYM] received [under the Trust Agreement] could be used . . . [for] any purpose other than [to] benefit" the plan beneficiaries or be paid to "any person or entity" other than UCOR [*Id.*].

On June 6, 2012, in accordance with the terms of the Trust Agreement, BNYM negotiated five checks for a total of $214,022.59 [Doc. 1-1 ¶ 9; Doc. 5-1]. Each check listed UCOR's predecessor in interest, Bechtel Jacobs, as named payee and included the following language under the phrase "endorse here" on the reverse side of the instrument:

---

[2] While matters outside the pleadings are generally not considered when ruling on a Rule 12(b)(6) motion, the Court is permitted to consider certain pertinent documents as "part of the pleadings" when the documents are attached to the motion to dismiss, referred to in the plaintiff's complaint, and central to a claim. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* Here, UCOR referenced the checks and Trust Agreement throughout its complaint [Doc. 1-1]. BNYM attached the both sets of documents to its motion to dismiss [Docs. 5-1, 5-2], and the contents of the both sets of documents are central to resolution of UCOR's claims. The Court therefore considers the documents in its analysis.

"DEPOSIT TO THE ACCOUNT OF THE WITHIN NAMED PAYEE. This benefit is payable only to the payee named on the reverse side of this instrument" [Doc. 5-1].

Despite BNYM forwarding the checks to Bechtel Jacobs, they never reached UCOR [Doc. 1-1 ¶ 10]. Instead, the checks came into the possession of a stranger to the transaction who then deposited the same into an account at Enrichment Federal Credit Union ("EFCU") [*Id.*]. EFCU accepted the deposit despite the language limiting payment of the checks "to the [named] payee" and the absence of an endorsement from Bechtel Jacobs or successor in interest UCOR [*Id.*]. Shortly thereafter, EFCU—the depositary bank—presented all five checks to BNYM—the drawee and payor bank [*Id.* ¶ 11].[3] Despite the circumstances outlined above, BNYM honored the checks in full [*Id.*].

At some point after BNYM made payment to EFCU, UCOR notified BNYM that the checks it honored were "most likely stolen and deposited to the account of a stranger" [*Id.* ¶ 15]. In an attempt to ensure that plan coverage continued uninterrupted, UCOR paid the full value of the remitted premiums to insurer, Aetna, out of its own funds. [*Id.*].

UCOR filed the instant action in the Circuit Court for Anderson County, Tennessee in August of 2015 [Doc. 1-1]. The complaint contains the following causes of action against BNYM: (1) common law negligence ("Claim One"); (2) common law

---

[3] The "drawee" is the "person ordered in a draft to make a payment." Tenn. Code Ann. § 47-3-103(a)(4). Here, the checks ordered BNYM to pay an amount to Bechtel Jacobs, the designated payee [Doc. 5-1]. Therefore, BNYM is the drawee bank.

The "depositary bank" is "the first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter." Tenn. Code Ann. § 47-4-105(2). The "payor bank" is the "bank that is the drawee of a draft." *Id.* § 47-4-105(3). Here, EFCU was the bank with which the stranger deposited the checks and therefore the depositary bank. BNYM, the drawee bank, is also the payor bank.

3

conversion ("Claim Two"); (3) common law breach of contract ("Claim Three"); (4) common law breach of duty of good faith and fair dealing ("Claim Four"); (5) "strict liability" under the Tennessee Uniform Commercial Code ("TUCC") ("Claim Five"); and (6) common law breach of fiduciary duty ("Claim Six") [*Id.* ¶¶ 19–49]. All six theories focus on BNYM's decision to honor the unendorsed checks and seek damages equal to the value of the same, $214,222.59 [*Id.*]. Two months after UCOR filed the action, BNYM removed it to the United States District Court for the Eastern District of Tennessee.

## II. Request for a Hearing and Oral Argument

In addition to BNYM's motion to dismiss, the Court is in possession of UCOR's request that the matter be set "for oral argument so that the parties can fully advise the [C]ourt of the issues" and "provide any other information the [C]ourt may find useful in reaching its decision" [Doc. 18 p. 2]. BNYM argues no hearing is necessary [Doc. 20].

The Court's preferences regarding oral argument on motions provide that the Court: "considers requests for oral argument on a case by case basis and may set a motion for oral argument even absent a request by the parties." Where the request is made by one of the parties, granting that motion is entirely at the Court's discretion. *Nam v. U.S. Xpress, Inc.*, No. 1:11-cv-116, 2012 WL 10161528, at *8 (E.D. Tenn. June 25, 2012).

For the reasons discussed herein, the Court finds that UCOR and BNYM have briefed the matter in a manner that makes additional argument unnecessary. Because the Court is capable of resolving the matter without a hearing and because UCOR has failed to identify what, if any, benefit oral argument would provide, the request will be denied.

4

**III.    BNYM's Motion to Dismiss**

BNYM moves to dismiss all claims contained in UCOR's Complaint.

**A.    Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal standard, S*mith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do," neither will "naked assertion[s]' devoid of 'further factual enhancement[,]" nor "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

Motions to dismiss pursuant to Rule 12(b)(6) are uniformly directed at the complaint itself.  When faced with such a motion, courts must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that

5

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

### B. Analysis

BNYM articulates two arguments in favor of dismissal. First, BNYM argues that all five of UCOR's common law causes of action are displaced by the TUCC and that the sole remaining claim—which UCOR suggests should be construed as an action for conversion under Tennessee Code Annotated § 47-3-410—is barred by expiration of the statute of limitations contained in Tennessee Code Annotated § 47-3-118(g) [Doc. 6 pp. 2, 5–10]. In alternative, should the Court determine that the breach of contract, duty of good faith and fair dealing, and fiduciary duty claims are not displaced, BNYM argues that UCOR has failed to allege the facts necessary for success on those claims [*Id.* at 10–14]. Because the Court agrees with the former, it finds that it need not opine on the latter.

#### 1. Displacement of Common Law Causes of Action

"The drafters of the [T]UCC set out to preserve and, where necessary, clarify and conform the law [of] merc[antilism] with modern commercial practice." *C-Wood Lumber Co. v. Wayne Cty. Bank*, 233 S.W.3d 263, 280 (Tenn. Ct. App. 2007) (citing Tenn. Code Ann. § 47-1-102 cmt. 1).[4] While the TUCC does not purport to codify the entire body of law affecting the rights and obligations of parties to commercial

---

[4] For purposes of the instant action, all relevant provisions of the TUCC are identical to their sister provisions with the model UCC code.

6

transactions, it does constitute "the primary source of commercial law rules for the areas it governs because it represents the considered choices of its drafters and of the Tennessee General Assembly about the appropriate policies to be furthered in the transactions it covers." *Id.* These policies include: (1) simplification, clarification, and modernization of the law governing commercial transactions; (2) facilitation of the continued expansion of commercial practices through custom, usage, and agreement; and (3) imposition of a uniform set of rules among the various jurisdictions. *Id.* at 280–81.

"The question of whether the [T]UCC has displaced other principles of law and equity in a given situation is one that must be decided in each case." *Dean v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 506 (Ky. 2014) (citation omitted). "A common law claim is displaced when the [T]UCC 'provides a comprehensive remedy for the parties to a transaction.'" *Crawford v. JP Morgan Chase Bank, N.A.*, No. 08-cv-12634, 2009 WL 1913415, at *5 (E.D. Mich. June 30, 2009) (quoting *New Jersey Bank v. Bradford, Inc.*, 690 F.2d 339, 346–47 (3rd Cir. 1982)); *see also C-Wood Lumber Co.*, 233 S.W.3d at 281 (noting that "the prevailing view now is that when the UCC provides a comprehensive remedy for the parties to a transaction, common-law and other non-Code claims and remedies should be barred").

The TUCC provides a comprehensive remedy, and thus displaces parallel common law causes of action, wherever (1) the claim under the TUCC "would be rendered meaningless by allowing the common law claims" or (2) "reliance on the common law would thwart the purposes of [adopting the uniform provision]." *Crawford*, 2009 WL

7

1913415, at *5 (citations omitted).  The Tennessee Supreme Court has made clear that "courts dealing with 'hard cases' should be hesitant to recognize common law . . . claims or to employ common law . . . remedies in the mistaken belief that they are dealing with one of the rare transactions not covered by the [TUCC]."  *C-Wood Lumber Co.*, 233 S.W.3d at 281.

"Articles 3 and 4 of the [T]UCC embody a delicately balanced statutory scheme governing the endorsement, negotiation, collection and payment of checks."  *Id*.  The provisions "provide discrete loss-allocation rules uniquely applicable to banks" and, while "not comprehensive, [are] nearly so."  *Id.*  Relevant here, the TUCC provides that "[t]he law applicable to conversion of personal property applies to instruments," that a check qualifies as an instrument, and, as a result, that a check "is converted if . . . a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment."  Tenn. Code Ann. § 47-3-420(a); *see also Id.* §§ 47-3-104(e), (f) (defining "instrument" as "negotiable instrument" and check as a type of "negotiable instrument").

All five of UCOR's common law causes of action ground liability in BNYM's decision to honor unendorsed checks presented by a depositary back that improperly accepted the same from an individual other than the named payee [Doc. 1–1 ¶¶ 19–49].

In Claims One and Two, UCOR alleges that BNYM's decision to honor the checks amounted to a deviation from the standard of care established by "state and federal laws" [*Id.* ¶¶ 19–23], and resulted in a conversion of funds rightfully due to

8

UCOR [*Id.* ¶¶ 24–28]. The express language of Tennessee Code Annotated § 47-3-420 makes clear that the law applicable to the conversion of personal property is intended to apply under the TUCC and that a bank commits a conversion within the meaning of that provision when it makes payment on a check to someone other than the lawful holder.

The fact that other provisions of the TUCC specifically address what, if any, impact negligence has on the obligations of a payor bank, Tenn. Code Ann. § 47-3-406, leads the Court to conclude that the Tennessee General Assembly intended the TUCC conversion provision to govern even in those cases where the improper payment of a check amounts to a deviation from professional banking standards. Because, at their core, UCOR's common law conversion and negligence claims hinge on the propriety of BNYM's decision to honor the unendorsed checks and because the TUCC articulates a specific set of loss-allocation rules for injuries arising from improper payment of checks, the latter would be rendered meaningless if Counts One and Two were allowed to proceed. *See, e.g.*, *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 780 (E.D. Pa. 2008) ("Permitting a parallel common law conversion claim where recovery is specifically provided for by the [PUCC] would render the [PUCC] meaningless."); *C-Wood Lumber Co.*, 233 S.W.3d at 281–82 (explaining that conversion and negligence claims were displaced where the plaintiff grounded liability in the defendant bank's decision to honor checks upon presentment); *Am. Liberty Ins. Co. v. AmSouth Bank*, 825 S.2d 786, 796 (Ala. 2002) (finding conversion claim based "upon payment of an instrument" was specifically addressed by the AUCC and thus displaced).

9

In Counts Three, Four, and Six, UCOR argues that payment of the checks amounted to a breach of contractual and fiduciary obligations, i.e., BNYM's promise to ensure that funds held under the Trust Agreement were "properly paid" to UCOR [Doc. 1-1 ¶¶ 29–37], and fiduciary obligation under the same to avoid the "diversion of . . . funds intended for [plan beneficiaries]" [*Id.* ¶¶ 38–49]. Again, the claims focus on a single instance of conduct—BNYM's decision to honor the checks. Because parallel breach of contract and fiduciary duty claims would frustrate a core principle supporting adoption of the uniform code, the Court finds that it need not address whether recognition of those claims would render one or more of the provisions of the TUCC redundant.

It is well established that a key goal of the uniform commercial code is to establish uniformity among state commercial laws, thereby easing transactional costs. *See Menichini v. Grant*, 995 F.2d 1124, 1231 (3d Cir. 1993) (noting that "uniform application of legal principles . . . is a fundamental objective of the Code"). Displacement of common law claims by a comprehensive statutory scheme promotes interstate commerce by allowing business to rely on one set of loss-allocation rules. *Id.*

While Tennessee has a six-year statute of limitations for contract actions, Tenn. Code Ann. 28-3-109(a)(3), other states have different schemes. *See, e.g.*, *Hansen v. Stanley Martin Cos.*, 585 S.E.2d 567, 573 (Va. 2003) (noting the difference between Virginia's five-years statute of limitations for breach of contract claims and Maryland's three-year statute of limitations). Allowing parallel claims for breach of contract and fiduciary duty where the alleged breach resulted from a drawee bank's decision to honor

Case 3:15-cv-00465-TAV-CCS   Document 25   Filed 09/26/16   Page 10 of 16   PageID #: 171

checks presented by a depositary bank would permit the application of non-uniform state law statutes of limitations and condone the use of creative pleading to circumvent the uniform loss-allocation scheme envisioned by the drafters of the uniform code. *See Menichini*, 995 F.2d at 1231 ("The finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends." (internal citation omitted)).

Because the TUCC provides a comprehensive remedial scheme for the duties and obligations related to the payment of checks and because the purpose of a uniform code "cannot be served if parties [are allowed to] avoid the requirements of the [that code] by pleading common law cause of action along with [uniform code] claims for the same alleged transgressions," *Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 582 (N.D. Ohio 2006), Counts Three, Four, and Six are displaced. *See Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 712–16 (E.D. Pa. 2010) (finding that breach of contract and breach of the duty of good faith and fair dealing claims were displaced where the claims disturbed the uniform loss-allocation scheme established by the PUCC); *Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1164 (D. Colo. 2010) (finding that CUCC "displace[d] . . . common law tort claims of conversion and breach of fiduciary duty."); *Dean*, 434 S.W.3d at 509–10 (rejecting the plaintiff's attempt to recast the KUCC claim—improper payment of a check—as claims for breach of contract and diversion of funds); *see also Crawford*, 2009 WL 1913415, at *6 (finding the MUCC

displaced common law breach of contract claim where recognition would "undermine the purpose of the code").

Because Counts One, Two, Three, Four, and Six are displaced by the TUCC, those causes of action will be dismissed as a result of UCOR's failure to state a viable claim.

### 2. Proper Characterization of UCOR's TUCC Claim

In the sole remaining cause of action—Count Five, UCOR seeks to hold BNYM "strictly liable . . . for conversion" [Doc. 1-1 ¶¶ 38–44]. In support of its claim, UCOR cites numerous provisions of the TUCC, including provisions addressing: (1) lost, destroyed, or stolen certified checks, Tenn. Code Ann. § 47-3-312(b); (2) claims to an instrument, Tenn. Code Ann. § 47-3-306; (3) enforcement of a stolen instrument, Tenn. Code Ann. § 47-3-309; (4) unauthorized signatures, Tenn. Code Ann. § 47-3-403; and (5) negligence contributing to a loss, Tenn. Code Ann. § 47-3-406 [*Id.* ¶¶ 41, 42].

To the extent that UCOR suggests that BNYM should be held liable for failing to make payment on a missing check under Tennessee Code Annotated § 47-3-312 [*Id.* ¶ 42], the Court disagrees. UCOR alleges that a stranger deposited all five checks into a private account [*Id.* ¶¶ 9–11], and asserts that BNYM made payment on those checks when they were presented by EFCU—the depositary bank that accepted the same without an endorsement by the named payee [*Id.* ¶¶ 41–42]. The instant case is not one in which the designated payee on a misplaced or missing check, having adequately proven its content and existence, seeks payment on that check. Instead, this is a case in which the rightful holder of a check seeks to hold the drawee bank liable for making payment to a

12

party that was not entitled to receive it. The Court interprets Count Five as one for conversion under Tennessee Code Annotated § 47-3-420. *See* Tenn. Code Ann. § 47-3-420 cmt. 1 (describing UCOR's scenario as a conversion claim under the TUCC that may be brought against both the depositary bank—EFCU—and payor bank—BNYM)].

### 3. Applicable Statute of Limitations

After arguing that UCOR's strict liability conversion claim should be interpreted as an action for conversion under Tennessee Code Annotated § 47-3-420, BNYM argues that the claim is barred by expiration of the three-year statute of limitations in Tennessee Code Annotated § 47-3-118(g) [Doc. 6 pp. 8–10; Doc. 17 pp. 3–6]. UCOR articulates two arguments in response. First, UCOR argues that the dispute involves failure to pay "an accepted check other than a certified check" and thus is governed by the six-year statute of limitations under Tennessee Code Annotated § 47-3-118(f) [Doc. 15 pp. 6–7]. In alternative, because the "gravamen" of the action lies in breach of the Trust Agreement, UCOR suggests that the Court apply the six-year statute of limitations applicable to common law breach of contract actions under Tennessee Code Annotated § 28-3-109(a)(3) [*Id.* at 7–8]. Upon review, the Court agrees with BNYM.

Subsection (g) of Tennessee Code Annotated § 47-3-118 provides that "an action for conversion of an instrument . . . must be commenced within three years after the cause of action accrues." Tenn. Code Ann. § 47-3-118(g). The sole remaining claim—Count Five, which this Court has interpreted as an attempt to hold BNYM liable for making payment on a check to a party not entitled to relieve that payment, i.e.

13

conversion, falls squarely within the scope of that provision. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002).

To the extent UCOR urges the Court to apply the six-year statute of limitations set forth in Tennessee Code Annotated § 47-3-118(f), it declines to do so. Subsection (f) of Tennessee Code Annotated provides a six-year window for bringing an "action to enforce the obligation of a party to pay an accepted draft, other than a certified check." Tenn. Code Ann. § 47-3-118(f). There are two reasons that the provision is inapplicable here.

First, UCOR is not suing BNYM to enforce an obligation for BNYM to pay an unpaid, accepted check. To the contrary, UCOR is suing BNYM to recover the full value of the five checks that it claims BNYM "converted" by improperly making payment on the same to an individual who was not entitled to receive such payment.

Second, the checks presented by EFCU were not "accepted drafts." Although checks are a type of "draft," Tenn. Code Ann. § 47-1-104(f), "acceptance" of a draft requires that the "drawee sign[] [an] agreement to pay [the] draft as presented" and "becomes effective when notification pursuant to instructions is given or the accepted draft is delivered for the purpose of giving rights on the acceptance to any person," Tenn. Code Ann. § 47-3-409(a). Further, the agreement to accept a draft "must be written on the draft." *Id.* Here, BNYM—not EFCU—is the drawee and nothing in the complaint suggests that BNYM ever "accepted" the five checks by way of a written agreement, much less an agreement displayed or inscribed on the checks themselves [Doc. 1-1; Doc. 5-1]. Even if the parties had executed such an agreement, BNYM's status as a bank

14

would have converted any accepted check into a certified check. *See* Tenn. Code Ann. § 47-3-409(d) (explaining that any time a bank "accepts a check," i.e., when a bank turns a check into an "accepted check," the check becomes a "certified check"). Thus, Tennessee Code Annotated § 47-3-118(f), which expressly limits its application to accepted drafts "other than certified drafts," is inapplicable.[5]

The Court declines UCOR's alternative request as well [Doc. 15 pp. 7–8]. As previously discussed, UCOR's parallel actions for breach of contract and fiduciary duty are displaced, *see supra* III. B. 1., and UCOR's sole remaining TUCC claim constitutes an action for conversion under Tennessee Code Annotated § 47-3-420(a), *see supra* III. B. 2. UCOR has failed to cite, and the Court is unaware of, any authority that supports foregoing application of a TUCC statute of limitations in favor of the longer, general statute of limitations applicable to a displaced common law claim. *See Lopez v. SunTrust Bank*, No. 3:13-cv-01216, 2014 WL 7238645, at *6 (M.D. Tenn. Dec. 17, 2014) (finding breach of contract claim displaced by parallel claim under the uniform commercial code and applying the statute of limitations applicable to the latter).

The three-year window for requesting timely relief under Tennessee Code Annotated § 47-3-118(g) begins to run from the time that a converted check is negotiated. *Lee*, 90 S.W.3d at 620. In the instant case, BNYM negotiated all five of the checks in

---

[5] The TUCC provides a three-year statute of limitations for actions that attempt to enforce an obligation to pay a certified check. *See* Tenn. Code Ann. § 47-1-118(d) ("An action to enforce the obligation of the acceptor of a certified check . . . must be commenced within three years after demand for payment is made to the acceptor."). Because the three year statutory period for enforcing certified checks mirrors the window for filing an action for conversion, Tenn. Code Ann. § 47-3-118(g), the Court need not determine which provision applies.

15

June of 2012 [Doc. 5-1]. UCOR did not bring suit against BNYM for conversion until August of 2015—several months after expiration of the three-year window for requesting relief under Tennessee Code Annotated § 47-3-118(g) [Doc. 1-1]. Because the statutory action for conversion—Count Five in the complaint—is barred by operation of Tennessee Code Annotated § 47-3-118(g), it will be dismissed.[6]

## IV. Conclusion

For these reasons, UCOR's request for a hearing and oral argument [Doc. 18] will be **DENIED**. BNYM's Motion to Dismiss [Doc. 5] will be **GRANTED** and this case will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to **CLOSE** the case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] To the extent that UCOR requests that the Court grant it leave to amend the complaint to avoid dismissal for the grounds raised in BNYM's motion to dismiss, the request will be denied. The sole non-displaced cause of action—UCOR's claim for conversion under Tennessee Code Annotated § 47-3-420—is patently barred by the statute of limitations contained in Tennessee Code Annotated § 47-3-118(g). As such, no amendment would save it. *See, e.g.*, *Lopez*, 2014 WL 7238645, at *6–7.